## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

New England Network-Reps, L.L.C.,                    Civil No. 09-3613 (DWF/TNL)

        Plaintiff,

v.                                                   **MEMORANDUM**
                                                     **OPINION AND ORDER**

Micom Corporation, a Minnesota
corporation; and Micom Circuits West,
a Delaware corporation,

        Defendants.

_____

Susan E. Tegt, Esq., and Thomas P. Malone, Esq., Barna Guzy & Steffen, Ltd., counsel
for Plaintiff.

LuAnn M. Petricka, Esq., Petricka Law Firm, P.A.; and William R. Skolnick, Esq.,
Skolnick & Schiff, P.A., counsel for Defendants.

_____


## INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought by

Plaintiff New England Network-Reps, L.L.C. ("New England Network") and Defendant

Micom Corporation ("Micom"). For the reasons set forth below, both motions are

denied.

## BACKGROUND

New England Network is a New Hampshire limited liability company in the

business of providing manufacturer representation services. (Aff. of Thomas P. Malone

("Malone Aff."), Ex. A. (Dep. of Patrick J. Clark ("Clark Dep.")) at 10.)  Micom is a

Minnesota corporation in the business of manufacturing printed circuit boards for

multiple applications, including use in defense systems for the United Sates government.

(Malone Aff., Ex. B. (Dep. of Marilyn Walhof ("Walhof Dep.")) at 21-22.)  Defendant

Micom Circuits West ("MCW") is a Delaware corporation in the business of

manufacturing printed circuit boards with its sole facility in Tucson, Arizona.  (*Id.* at

49-50; Malone Aff., Ex. C (Dep. of Cindy Varhol ("Varhol Dep.")) at 16-19.)

        In the late 1980s, Micom purchased the MCW facility in order to facilitate

Micom's relationship with Raytheon in Arizona.  (Walhof Dep. at 49-50.)  MCW was

sold in 1991 to Paul and Cindy Varhol, the son-in-law and daughter of Micom principal

Marilyn Walhof.  (Varhol Dep. at 17; Walhof Dep. at 14.)  The MCW facility was shut

down in 2009, and afterward Micom acquired certain machines and raw materials from

MCW.  (Varhol Dep. at 17, 26; Walhof Dep. at 99.)  Product was also moved from MCW

to Micom and then sold by Micom to MCW's former customers.  (Varhol Dep. at 26-28;

Walhof Dep. at 102.)

        In or around 2002, Pat Clark, New England Network's principal, met Glenn

VanHulzen, then Micom's Sales Manager.  (Clark Dep. at 11.)  At that time, Micom had a

pre-existing relationship with Raytheon in Arizona.  (Walhof Dep. at 48-49.)  Clark had a

relationship with Raytheon in New England.  (*Id.* at 106.)  Sometime before the end of

2003, VanHulzen and Micom began negotiating an agreement.  (Clark Dep. Ex. 7.)

On or around October 6, 2004, Clark, Walhof, and Cindy Varhol met in

Massachusetts and discussed the agreement.  (Clark Dep. at 52; Walhof Dep. at 128.)

The parties disagree as to what took place at this meeting.  Clark asserts that a

Manufacturer's Representative Agreement ("Representative Agreement") was signed by

Clark on behalf of New England Network and by Walhof on behalf of both Micom and

MCW and backdated to October 15, 2002.  (Clark Dep. at 52-56 and Ex. 5.)  Walhof

asserts that she does not remember signing or backdating the contract and that she would

never sign on behalf of MCW.  (Walhof Dep. at 128; Aff. of Marilyn Walhof ¶ 14.)  For

the purposes of its summary judgment motion, however, Micom defers to the

Representative Agreement as produced by New England Network.

The Representative Agreement provides that New England Network is to be paid

"5% of the 'Net Invoice Price' of the manufacturer's product on orders originating and

shipped within the territory."  (Clark Dep. Ex. 5 at 3.)  Representative Accounts are

identified as "[a]ll Raytheon accounts in the New England area or that has been originated

at said accounts."  (*Id.* at App. C.)  The parties agree that the Representative Agreement

was later amended to include accounts at Curtiss-Wright and Textron.  (Doc. No. 41 at 8.)

 The Representative Agreement also excludes certain accounts as protected Micom house

accounts.  (*Id.* at App. D.)

The Representative Agreement contains the following provisions regarding

renewal and termination:

> 7.    TERM OF AGREEMENT AND TERMINATION

3

A.      This AGREEMENT has an initial period of one (1) year and will be automatically renewed for additional one (1) year periods thereafter unless terminated by written notice from either party to the other not less than thirty (30) days prior to the end of the initial or subsequent one year term.

. . .

C.      This AGREEMANT [sic] may not be terminated except for failure to meet performance goals identified in Appendix B or for breach or default as described below.

MICOM may terminate this AGREEMENT on ten (10) days notice for any of the following reasons without obligation to pay commission for any orders except those in WIP and those already shipped by MICOM:

        . . .

        2.  A substantive breach of this AGREEMENT of [sic] default of the terms of this AGREEMENT by the REPRESENTATIVE, which has not been rectified after thirty (30) days notice of default or breach.

        . . .

D.      TERMINATION WITH MUTUAL CONSENT

Alternately, this AGREEMENT may be terminated at any time by mutual written agreement between both parties.

. . .

8.      RIGHTS UPON TERMINATION

After termination notice by either party, MICOM will pay the REPRESENTATIVE full commission on those orders booked within a (60) sixty day period from the date of termination and for any customer contracts for the period of the contract.

(Clark Dep. Ex. 5 at 3-4.)

By early 2005, a dispute had arisen between Micom and New England Networks regarding payment of commissions on certain Raytheon orders in which the part number began with "7" ("Series 7 Parts").  (Clark Dep. Ex. 45.)  A letter dated February 25, 2005 from Clark to Walhof stated in part:

> Your comment . . . indicating that you had never intended to pay commissions of part numbers that began with the number 7 came as a complete surprise but I agreed to look into it and get back to you.  I have mentioned since then that I could not accept this and we would need to work it out but today's letter is making it more formal; we expect to be paid for said work.

(*Id.*)  Micom's response stated in part:

> **Not all part #'s beginning with 7, only part numbers from Tucson Arizona that were quoted and built for two years in Arizona.**

> Micom began building Arizona part numbers in September of 2001.  These parts were quoted and built without a commissioned representative in Arizona.

> After final revision in 2002, Raytheon Arizona began building these part numbers through three other partnerships, California, Florida and Massachusetts.  Arizona had final say on all of these part numbers.  In January 2003 Micom started shipping parts to all three of the locations.

> In October 2003, our sales manager gave our accounting department all relevant information for New England Network.  **Our accounting department was told that Pat Clark of New England Network was to be paid commissions as of March of 2003 for all work quoted from Raytheon Massachusetts.  Commissions have been paid on a monthly basis to New England Network to date.**

> . . .

> You are asking to get paid on a Raytheon Arizona contract that was in place for two years prior to your agreement with Micom.

5

(*Id.* Ex. 46. (emphasis in original).)

Included in the current dispute regarding Raytheon orders is an agreement dated August 1, 2005 between Micom and Raytheon entitled Enterprise Agreement Number 2506 ("Enterprise Agreement"). (*See* Third Aff. of Paul L. Benjamin, Ex. B.) New England Network describes the Enterprise Agreement as being entered into with Raytheon's Andover, Massachusetts facility. (Doc. No. 47 at 13.) Micom states that "[t]he Enterprise Agreement is nothing more than a pricing agreement that Micom Corporation . . . entered into with Raytheon, Arizona." (Aff. of Marilyn Walhof ¶ 19.)

Despite the parties' dispute, New England Network continued to perform under the Representative Agreement and continued to accept and deposit commission checks. (Clark Dep. at 130-31, 178, 186.) Then on December 17, 2009, New England Networks filed suit against Micom and MCW. The Complaint asserts counts against each defendant for breach of contract, unjust enrichment, and promissory estoppel.

The parties agree that the Representative Agreement was still in place at the time New England Network filed suit. On June 9, 2010, Micom Corporation sent correspondence to New England Network entitled "Notice of Ongoing Material Breach and Termination of Agreement" stating in part that "your Client has been and continues to be in material breach of the agreement between the parties" ("June 9 Notice"). (*Id.* Ex. 36.) The parties disagree as to whether this notice caused the Representative Agreement to terminate on June 19, 2010, pursuant to paragraph 7C, or on October 14, 2010 for non-renewal.

6

On January 18, 2011, Micom filed its motion for summary judgment, asserting that the Series 7 Parts were a pre-existing account originated by Micom for which New England Network was not entitled to commissions and that New England Network's actions of continuing to accept and deposit commission checks constituted a ratification and waiver with respect to any unpaid commissions for Series 7 Parts.[1]  New England Network followed with a motion for summary judgment filed on February 25, 2011, asserting that the plain language of the Representative Agreement entitled New England Network to commissions for all orders placed by Raytheon Company in the New England area.

## DISCUSSION

### I.   Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

---

[1]     Defendants filed a motion for and noticed a "joint motion of Defendants Micom Corporation and Micom Circuits West for summary judgment."  (Doc. Nos. 34, 35.)  The supporting memorandum, however, is entitled "Memorandum of Law in Support of Summary Judgment Motion of Defendant Micom Corporation" and appears to seek relief only on behalf of Micom Corporation.  (Doc. No. 41.)  The Court therefore treats the

(Footnote Continued on Next Page)

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    The Parties' Motions

The parties have filed cross motions for summary judgment. New England Network asserts that it is entitled to summary judgment on its breach of contract claim because the plain language of the Representative Agreement entitles it to commissions for all orders placed by Raytheon Company in the New England area. New England Network asserts that the Representative Agreement binds both Micom and MCW. New England Network contends that the termination date is October 14, 2010 and that it therefore is entitled to commissions through December 13, 2010. These commissions

---

(Footnote Continued From Previous Page)
motion as having been brought only on behalf of Micom Corporation.

8

include Series 7 Parts orders as well as accounts at Curtiss-Wright and Textron.  In

addition, New England Network argues it is entitled to commissions on orders after

December 13, 2010 pursuant to the Enterprise Agreement.  New England Network asserts

further that the Defendants' affirmative defenses fail as a matter of law and that it is

entitled to attorney fees.  It also contends that it is entitled to summary judgment on its

unjust enrichment and promissory estoppel claims.

Micom asserts in its motion that it is entitled to summary judgment on all of New

England Network's claims.  Micom argues that Series 7 Parts orders did not originate in

New England and therefore are not covered by the Representative Agreement.  Micom

contends that even if such orders were within the Representative Agreement's scope,

New England Network ratified Micom's non-payment of commissions on Series 7 Parts

and therefore waived any right to seek damages.  In the alternative, Micom asserts that

New England Network's actions constituted an accord and satisfaction that eliminated

any further liability of Micom with respect to the unpaid commissions for Series 7 Parts.

Micom also contends that New England Network's claims are all based on the

Representative Agreement and therefore summary judgment is appropriate with respect to

the unjust enrichment and promissory estoppel claims.  Micom asserts that the

Representative Agreement terminated no later than June 19, 2010, that it is not liable for

MCW's debts, and that Micom is entitled to its attorney fees.

The parties' cross motions thus address overlapping issues.  The Court will address each issue in turn below.[2]

A.    Series 7 Parts

New England Network asserts that it is entitled to summary judgment because the plain language of the Representative Agreement entitles it to commissions for all orders placed by Raytheon Company in the New England area.  New England Network contends that the Representative Agreement identified those accounts for which it was not entitled to commissions but did not list the Series 7 Parts.  New England Networks therefore asserts that Micom's decision to not pay commissions on Series 7 Parts is a unilateral attempt to alter the parties' agreement.

Micom asserts that the Series 7 Parts were never part of its agreement with New England Network.  Micom contends that these parts belong to a pre-existing account that originated with Raytheon in Tucson, Arizona.  Micom asserts that because the Series 7 Parts were never a New England account, it was not necessary to explicitly exclude those parts in the Representative Agreement.

The Court concludes that fact issues prevent summary judgment for either party regarding unpaid commissions for Series 7 Parts.  Under the Representative Agreement, New England Network is only entitled to commissions from Micom "on orders

_____

[2]    In evaluating an issue with respect to each motion, the Court views the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.

originating and shipped within the territory." (Clark Dep. Ex. 5 ¶ 2.) A material fact dispute exists at least as to whether orders for Series 7 Parts originated in Arizona, even if the orders were shipped to Raytheon facilities in Massachusetts. The Court therefore denies New England Network's motion for summary judgment as to unpaid commissions on Series 7 Parts. The Court also denies Micom's motion for summary judgment to the extent it asserts Series 7 Parts were excluded from the Representative Agreement.

### B.    Ratification and Waiver or Accord and Satisfaction

Micom contends that even if the Representative Agreement originally included the Series 7 Parts, New England Network's subsequent behavior ratified Micom's non-payment of commissions on those parts. Micom asserts that New England Network knew it was not being paid commissions on the Series 7 Parts but nevertheless continued to accept and deposit payments from Micom. Micom asserts that this was done without an express reservation of rights and therefore New England Network has waived any right to demand payment of commissions for the Series 7 Parts orders. Alternatively, Micom argues that the parties entered into an accord and satisfaction, again relying on New England Network's continued performance under the contract and acceptance of commission payments.

New England Network responds that it objected in writing to Micom's unilateral attempt to modify the Representative Agreement and therefore reserved its rights. New England Network also asserts that questions of fact exist as to whether or not it had the requisite knowledge required for a ratification as to the amount of commissions it was

owed.  New England Network argues therefore that summary judgment should be denied

as to Micom's ratification and waiver argument.  New England Network also contends

that Micom has failed to set forth facts showing that an accord and satisfaction took place

between the parties.

The Court concludes that Micom is not entitled to summary judgment on the basis

of its ratification and waiver argument.  At a minimum, fact issues exist as to whether or

not New England Network's conduct constituted a ratification of Micom's failure to pay

commission on Series 7 Parts.  A reasonable juror could conclude that Clark's written

statement that he "could not accept this" and that "we expect to be paid for said work"

demonstrates that New England Network had reserved its right to demand payment of

commissions on orders for Series 7 Parts.

Similarly, the Court concludes that fact issues preclude summary judgment based

on Micom's accord and satisfaction argument.  Accord and satisfaction requires a mutual

agreement that payment has been accepted in full satisfaction of the debt.  *Webb Bus.

Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 75 (Minn. 2000).  Here, a

reasonable juror could conclude that New England Network did not agree that the

allegedly partial commission payments were accepted in full satisfaction of Micom's

obligations under the Representative Agreement.

### C.    Termination Date

Micom asserts that the Representative Agreement was terminated effective

June 19, 2010.  It is undisputed that on June 9, 2010 Micom, through counsel, sent

correspondence entitled "Notice of Ongoing Material Breach and Termination of Agreement." The June 9 Notice stated in part that "[t]he nature of the material breaches . . . do not allow for any ability to cure under the circumstances." Micom asserts that the June 9 Notice satisfied the terms of paragraph 7C of the Representative Agreement and the Representative Agreement therefore terminated ten days later, on June 19.

New England Network asserts that the June 9 Notice did not satisfy the terms of paragraph 7C. New England Network argues that paragraph 7C allows for ten days notice of termination based on a "substantive breach . . . which has not been rectified after thirty (30) days notice of default or breach." New England Network argues that Micom has not presented any evidence of "substantive" breach as called for in the Representative Agreement. New England Network asserts in addition that it was never provided the opportunity to cure required under paragraph 7C and that therefore the June 9 Notice was merely notice of non-renewal that caused the Representative Agreement to terminate on October 14, 2010.

The Court concludes that disputed fact issues prevent a determination at the summary judgment stage as to the Representative Agreement's termination date. In particular, the fact finder will need to determine whether New England Network was in "substantive breach" of the Representative Agreement and whether the June 9 Notice satisfied the terms of paragraph 7C.

### D.     Equitable Claims

Both parties move for summary judgment on New England Network's unjust

enrichment and promissory estoppel claims.  Micom asserts that it is entitled to summary

judgment on New England Network's equitable claims because those claims all rely on

the Representative Agreement.  Micom argues that because a contract governs the parties'

rights and obligations, equitable relief is unavailable.  New England Network asserts that

it is entitled to summary judgment on its equitable claims in the event the Court finds that

those claims are not covered by the Representative Agreement.

Unjust enrichment ultimately requires New England Network to prove that

Defendants received something of value, which they were not entitled to, under

circumstances that would make it unjust to permit its retention.  *See Southtown Plumbing,*

*Inc. v. Har-Ned Lumber Co. Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  New

England Network must show that Defendants were "unjustly enriched in the sense that

the term unjustly could mean illegally or unlawfully."  *First Nat'l Bank of St. Paul v.*

*Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted).  Under

Minnesota law unjust enrichment is an equitable remedy that plaintiffs may not pursue

unless there is no adequate remedy at law.  *See Southtown Plumbing, Inc.*, 49 N.W.2d at

140.

Promissory estoppel is a creature of equity which implies "a contract in law where

none exists in fact."  *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.

1981).  The elements of the doctrine of promissory estoppel are:  (1) was there a clear and

definite promise; (2) did the promisor intend to induce reliance, and did such reliance

occur; and (3) must the promise be enforced to prevent an injustice. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995). Because promissory estoppel implies "a contract in law where none exists in fact," *Grouse*, 306 N.W.2d at 116, such a claim may not proceed where a legally enforceable contract was formed. *Gorham v. Benson Optical*, 539 N.W.2d 798, 801-802 (Minn. App. 1995).

The Court concludes that neither party is entitled to summary judgment as to New England Network's unjust enrichment and promissory estoppel claims. At least the following fact issues preclude summary judgment here: whether or not the Series 7 Parts are governed by the Representative Agreement, whether or not Micom unjustly benefited from representative services provided by New England Network with respect to the Series 7 Parts, and whether or not any clear and definite promises were made by Micom regarding the relationship between Micom and MCW.

### E.     Curtiss-Wright and Textron

New England Network asserts that it is entitled to summary judgment for unpaid commissions on accounts with Curtiss-Wright and Textron.  Micom does not dispute that commission payments are owed to New England Network with respect to these accounts.  Micom asserts that it has not refused to pay these monies and has "escrowed monies not in dispute . . . pending a resolution of the disputed termination date."  (Doc. No. 78 at 18 n.8.)  New England Network requests that if the Court determines that a material fact dispute exists as to the termination date, the Court grant partial summary judgment for those Curtiss-Wright and Textron commissions owing based on a June 19, 2010 termination date.

The Court concludes that fact issues preclude summary judgment with respect to New England Network's claim for commissions on the Curtiss-Wright and Textron accounts.  As discussed above, the Court concludes that a material fact dispute exists with respect to the termination date of the Representative Agreement.  In addition, while the parties agree that some unpaid commissions are owed to New England Network, the Court has reviewed the record, including the expert reports submitted by each party, and concludes that New England Network has not carried its burden of showing that there is no genuine issue of material fact as to the amount of those commissions even with respect to Micom's asserted June 19, 2010 termination date.

F.      **Enterprise Agreement**

Paragraph 8 of the Representative Agreement states that following termination Micom will pay New England Network full commission on orders "for any customer contracts for the period of the contract."  New England Network asserts that the Enterprise Agreement is such a "customer contract" and that it therefore is entitled to commissions on any orders made pursuant to the Enterprise Agreement through its current termination date of May 7, 2013.  Micom responds that the Enterprise Agreement is a pricing contract that Micom negotiated directly with Raytheon in Arizona without New England Network's involvement, does not require the purchase of any minimum quantity of product by Raytheon, and therefore is not the type of "customer contract" contemplated by Paragraph 8 of the Agreement.

The Court concludes that fact issues preclude the entry of summary judgment as to Micom's claim for commissions based on the Enterprise Agreement.  The finder of fact will need to determine whether the Enterprise Agreement originated with Raytheon in New England and whether a pricing contract without a minimum purchase term qualifies as a "customer contract" under paragraph 8 of the Representative Agreement.

### G.    MCW

Micom requests that the Court find that Micom is not liable for any debts owed to New England Network by MCW.  Micom asserts that no writing exists that provides that Micom is liable for MCW's debts and therefore New England Network's Complaint seeking joint and several liability fails as a matter of law.

The Court disagrees.  Questions of fact exist at least as to whether or not Walhof signed the Representative Agreement on behalf of MCW, and, if the fact finder concludes that she did so, whether Walhof had either actual or apparent authority to bind MCW at that time.  The Court therefore denies Micom's motion for summary judgment as to this issue.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment (Doc. No. [34]) is **DENIED**.

2.    New England Network's Motion for Summary Judgment (Doc. No. [30]) is **DENIED**.


Dated:  May 11, 2011               s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge